Good afternoon. We have a pro se litigant, or litigants in this case, appearing by phone is my understanding, and I want to confirm that the whites are on the telephone. Can you hear us? Yes, sir. Okay, very well. The counsel for the appellate will begin in the case of New Century Holding versus Alan Jacobs. Mr. Indelicato? Good afternoon, and may it please the Court. Mark Indelicato from Hunt & Hessen on behalf of Alan Jacobs, liquidating trustee of New Century Liquidating Trust. With the permission of the Court, I would like to reserve three minutes for rebuttal. Granted. Thank you, Your Honor. The sole issue before the Court today is whether a corporate debtor that has provided notice of its bargate pursuant to a national publication, supplemented by notice of publication in a newspaper circulated in the principal place of business in which the debtor did business, is sufficient under the Supreme Court's ruling in Mullane and this Court's ruling in Chemtron. This is not a case, Your Honors, about whether or not the borrowers are known or unknown creditors. That was made clear in both the Bankruptcy Court and the District Court decision. That issue is not being addressed in this appeal. It's the adequacy of the publication notice. Correct, Your Honor. That is just solely the adequacy of the publication notice. All right. I think you seem to have framed the issue correctly, but just so I'm clear, are they known creditors or unknown creditors, and has that been definitively established? Your Honor, with respect to Mr. White, there was an earlier decision by the Bankruptcy Court in which the Bankruptcy Court determined that Mr. White was an unknown creditor. In fact, the Court has determined in all of the matters in which borrowers had not filed a litigation or a notice prior to the bankruptcy that they were unknown creditors. With respect to Mr. White, Mr. White has initially filed a motion for reconsideration. That was denied by the Bankruptcy Court, and there is now pending before the Bankruptcy Court another Mr. White's second motion for reconsideration, and that issue is subject to that motion for reconsideration. So that could come up to the District Court and to us at a later date? That may, Your Honor. Okay. So in addition, this is not about whether Mr. White or any of the other claimants are permitted to file a late-file proof of claim or whether or not there's excusable neglect. But if he is finally determined to be a known creditor, then would we not be rendering an advisory opinion since he's the only one before us on appeal? Your Honor, this — I re-asked that, and I thought we got good answers to it, but now I'm confused. Yes, Your Honor. This decision, although Mr. White is the only one before us on appeal, this decision affects and transcends Mr. White and affects the entirety of the bankruptcy process. Yeah, but the only one appealing was White. Correct, but — He doesn't have standing. If White's a known creditor, he would concede, I think, he's entitled to actual notice. We would, Your Honor. So what if we issued an opinion that says that unknown creditors are not entitled to actual notice, which is consistent with what most courts have said, and in this case, the two publications were sufficient? If we write an opinion saying that, and then later on the bankruptcy court holds Mr. White to be a known creditor, we will have issued, I think, the ultimate in advisory opinions, would we have not? I don't believe so, Your Honor, because as the White's case stands right now, although subject to a motion for reconsideration, Mr. White has been determined by the bankruptcy court to be an unknown creditor. Therefore, Mr. White — But subject to a motion for reconsideration is a pretty big thing. Well, Your Honor, it's the second motion for reconsideration. The initial motion for reconsideration has already been denied by the bankruptcy court. I don't dispute, Your Honor, that ultimately in a motion for reconsideration, the judge could determine that Mr. White is a known creditor. But as the facts are before us, and as the way they have been teed up by the bankruptcy court, we have an issue that's very germane, and I believe it will not be an advisory opinion. Although Mr. White is the only one who is appealing, if the district court decision is not reversed, it will affect the bankruptcy proceeding and all unknown creditors. Yes, it affects them. But if only one person takes an appeal, and that person has no standing because they're not affected by the district court order, then the appeal really should be dismissed. But, Your Honor, if this appeal were dismissed, then what would happen is you would be stripping Mr. White of his appellate rights because he has the right to appeal — oh, I'm sorry, the trustee has the right to appeal the decision of the district court. But the trustee didn't. Because the trustee — I'm sorry, Your Honor, the trustee did appeal to the Third Circuit. In other words, it's the trustee — If the second motion for reconsideration is denied, then he appeals that denial to the district court and argues to the district court, I am not an unknown creditor, I am, in fact, a known creditor. Then the district court passes on that issue, and then a disgruntled party can appeal to our court. Your Honor, but then we're stuck with the district court decision. The question is framed to us by the — And let me back up. The only one who appealed from the bankruptcy court to the district court — I'm sorry, Your Honor, that's correct. — was White. That's correct. And so the question still comes back to what we asked when we asked for a briefing. Should the district court not have at least maybe held it in abeyance until his status is determined? Your Honor, I believe — Because his status has not been finally determined, has it? It has not, Your Honor. Okay. Until his status has been finally determined, wouldn't the district court at least have stayed the matter pending a determination as to whether the person before her has standing with respect to the issue before her? Your Honor, I believe that the — as we articulate in our briefings before the court in our letter, we believe this does affect Mr. White, although — and I believe the timing may have been — I don't recall the exact timing between each of the motions, but Mr. White has been determined by the bankruptcy court to have been an unknown creditor. But it's not final. It is not final with respect to Mr. White individually. Right. But whether or not he's a known creditor or an unknown creditor is not before this court. It is. It's before the district court because the district court — if he is a known creditor, the district court had no jurisdiction, because he had no standing, to decide an issue that affected only the unknown creditor. But at the time — at the time the global notice motion was filed, Mr. White was an unknown creditor. It hadn't been finally determined. Your Honor, his time — I do not recall, but his time to make a motion for reconsideration, that was, I believe, still pending at the time the global notice motion was decided. Were his motions for reconsideration timely? Yes, they were, Your Honor. That's a problem. And there's no finality, no appeal — no right to appeal that until those reconsideration motions are decided. Your Honor — We're kind of back where we — We're back where we were with the letter we sent. Yeah. And I thought I was satisfied with the letter, but now I'm not satisfied. Your Honor, maybe if I could just bring it back. And we — this is our only case this afternoon, so it's easy for me to say, Judge Hardiman will decide the court. Your Honor, the issue — the issues that we have are, initially, Judge — Judge Carey made a determination in a motion to dismiss, with respect to Mr. White, that there was not a fully developed record before him as to whether or not a notice was sufficient. And that emanated out of the — this Court's ruling in Grossman and Owings Corning. Judge Carey was concerned regarding the emphasis on due process, whether or not the notice was sufficient. And so, as a result of that, the way it was teed up in the bankruptcy proceeding is to file a motion getting a declaration that the notice was sufficient for all known creditors, not just borrowers, not just Mr. White, for all known creditors. When that determination was made by the Bankruptcy Court as to whether or not Mr. White was an unknown creditor, he determined, based on the facts before him, that Mr. White was an unknown creditor. I concede, Your Honor, that that issue is subject to a motion for reconsideration. But that is not — whether Mr. White is a known or unknown creditor is not the issue before the Court today. The issue before the Court today is whether or not the notice, as it affects all other, including Mr. White, unknown creditors, is — the notice is sufficient. Absent a decision from this Court or some vacation of the order of the District Court, we have an order in the New Century Bankruptcy Proceeding that says the notice provided by the debtors in the Chapter 11 proceeding is not sufficient to satisfy the requirements of Mullane and Chemtron. That would open the doors, Your Honor. That would require — because a trustee is a fiduciary and he can't make a final distribution, it would require him to either do some additional proceedings or issue a new bar order seven years after the fact. What would be the remedy? You say, or issue a new bar date order, or — what are the alternatives here? If this notice was insufficient? Your Honor, we would have to explore with the trustee, given the passage of time, whether there's another remedy. But off the top of my head, I believe the only remedy would be for the trustee to seek a further bar order for unknown creditors. Why does this notice pass muster under the case law, under our case law in Wright, for instance? Your Honor, I think what we need to do is we need to start with Mullane. And we need to — and as this Court said in Chemtron, the notice that needs to be provided is notice reasonably calculated to provide the parties with notice. Right. And how is this reasonably calculated to reach all interested parties? What the debtors determined at the time they issued the bar order is they looked at several factors. One, they looked at the fact that New Century was doing business throughout the country. And in order to provide the notices based on existing case law, they determined that they would use the national edition of the Wall Street Journal. Even the district court acknowledged that that's a publication that reaches nationally. But they needed to provide actual notice, didn't they, to known creditors? Yes, Your Honor. Well, and the Whites may be known creditors. Your Honor, they may be known creditors. And if they are known creditors, they had to get actual notice. And we need to write an opinion saying that they were entitled to actual notice. If, of course, on the other hand, they're unknown creditors, then they're only entitled to constructive notice, and then we can decide whether the constructive notice you gave them satisfied due process. Your Honor, as I stated at the inception, the issue of whether they're known or unknown creditors individually as it relates to the Whites are not before you, Your Honor. All we're asking this court to determine is whether or not the notice that was given was sufficient to satisfy the standards of Canadian law. And I'm challenging you by suggesting the answer to that is it depends. It depends on whether the creditors are known or unknown. But it sounds like you want us to write an opinion that just says, it sounds like you're asking for an academic piece that says, for all unknown creditors, notice in the Wall Street Journal and the Orange County Register suffices for purposes of this case. That's the opinion and order you'd like to see. Your Honor, we don't believe that is an academic exercise. We think that's crucial to this bankruptcy case. It's crucial to the case, but it might – go ahead. Are there other borrowers who fall in the category of the Whites whose claims were post-bar date that have now been resurrected as a result of the district court's ruling? Your Honor, there are two – no. There are two that are still on appeal to the district court that could be affected by this ruling. As we indicated in our brief, there are two borrowers whose claims ultimately were deemed untimely as a result of the global notice motion by Judge Carey. They have appealed to the district court, and those matters are sub judice. Once this appeal was filed, we asked the district court to hold those cases in abeyance, pending a decision from the Third Circuit. Tell me exactly how the bankruptcy court did decide that this notice in the Wall Street Journal and the local notice was reasonably calculated to reach all interested parties, when the notice was one day in the Wall Street Journal, which there was evidence in the record before him of the Wall Street Journal's subscription. The average net worth of a Wall Street Journal subscriber is $2.5 million, and the value of the primary residence of the Wall Street Journal subscriber is $1 million. That was before Judge Carey. And we have here subprime lenders, which by virtue of the fact that they are subprime lenders, I would think you would infer, and so it would be a reasonable inference, that we've got borrowers here who do not have residences worth a million dollars. So how is a notice in the Wall Street Journal reasonably calculated to reach the, how many million borrowers were here? Well, there were certainly over a million borrowers throughout the course of the bankruptcy. I'd like to know how the district court found that. I didn't see the reasoning. Your Honor, let me start, if I may, and I know we're out of time, but to answer your question. Initially, you must look at this as unknown creditors, not focusing on borrowers. Well, no, you focus on, I mean, under right, we look at the circumstances of the case. That's correct, Your Honor. We look at the circumstances. So we do have to look at, don't we have to look at the makeup of the creditor body? But you must start when you're looking at the borrowers. The borrowers are account debtors. They owe the money to the debtors. They are account debtors, but they're also creditors to the extent they have claims. They're contingent, unliquidated, and unknown creditors unless they either commenced the litigation, sent us a notice, or some other form of assertion of their claim. But contingent and unliquidated is part of the definition of a claim. Yes, but it's unknown, Your Honor. So what I'm focusing on is the fact that to the extent a borrower was a known creditor, we gave them actual notice. And you did have a number of borrowers who filed suit, class actions and everything else. There were class actions, Your Honor. So why wouldn't that lead you to say, oh, well, then borrowers as a whole are potential creditors. They are claimants with a potential or an unliquidated claim, so we need to consider how to reach them. Your Honor, when this motion came before the bankruptcy court, we indicated to the judge in our pleadings, and I think we've indicated in our pleadings before this court, that at least the case law that exists at the time that says just because you are a borrower doesn't make you a creditor. It may make you an unknown creditor if something rises in the future, but the mere fact that you are a borrower does not make you a creditor. But this is a situation, and I'm kind of arguing with you, but I'm just trying to elicit a response. This is a situation where in the Missile Report, there were fears in 2004 that the borrowers were going to wake up and experience sticker shock after the teaser rates expired. Your Honor. And that happened. Your Honor, when we look at the notices required by Mullane and Chemtrail, we have to look at the facts that existed at the time the borrower was entered by the court. The Missile Report was commissioned at the request, and the examiner was appointed by the bankruptcy court, and over an eight-month period at a cost of $20 million, the examiner produced a report that came out eight months after the borrower was set. So to hold the debtor to the knowledge of what is in the Missile Report, and in that analyzing, what was done? You're fighting against some evidence that was before Judge Carey. Is it you, Lan? Yes, Your Honor. You have testified. The question was, so none of your decision was made to address any of the possible homeowners or anyone that didn't already have litigation, so that was really not addressed in your decision for publication. And she responds, no, that's not true. Because even though they were not known creditors, they potentially could have been unknown creditors that we would have sought to address for publication notice. That's correct, Your Honor. I don't dispute that. I'm not arguing that they weren't unknown creditors. What I'm suggesting, that is, that they were not the sole focus of the unknown creditors. There were many unknown creditors. Sure. There were unknown creditors who had indemnity claims. There were unknown institutional creditors. Okay, so you had to give notice that was reasonably calculated to reach all of them. Correct. Okay, and how was this reasonably calculated to reach them? The determination was made by the debtor, in conjunction with his advisors, that given the notice in the Wall Street Journal, one, because the Wall Street Journal was one of national publication, two, because the Wall Street Journal was a paper in which you would normally find these types of notices, and focusing on additional publication in the Orange County Register. You may normally find notices there, but does that mean that putting one day in the Wall Street Journal is reasonably calculated to reach? Your Honor, I think when we look at the sort of what this Court taught us in Chemtron, is that it would be unreasonable to expect that we would put a notification in every publication, which is an unvoiced bargaining. I don't think we would write an opinion saying you had to do that. So, Your Honor, they focused on, and there are a couple of things that you have to consider when, in fact, you're analyzing the bar date. One is that it's reasonably calculated to reach. And the debtor believed doing that by publishing it in the Wall Street Journal, one day in the Wall Street Journal. Now, as Judge Carey said, could, in hindsight, we have done a better job of reaching the masses? Maybe. But as Judge Carey said, after reviewing the analysis and the evidence before him, what we did is still met the constitutional standards. Publishing it in the Wall Street Journal was calculated to reach the vast majority of the greatest public. The standard says all. Reasonably calculated to reach all interested parties. And, Your Honor, what I meant to say was the Wall Street Journal, given that it was a national publication, was going to be available throughout the country, and that would be the best publication in order to reach all of the parties that potentially could have an interest. How much was the cost of this publication? Your Honor, although I don't believe it is in the record, I believe it was between $15,000 and $20,000. The record has a lot of reference to $12,000. That would probably be correct. How many creditors voted, what dollar amount of creditors voted on the confirmation? It was several hundred million dollars, Your Honor. By my tally, it's like $2 billion. That could be correct, Your Honor. And what were the costs of administration in the case? The legal fees alone, I believe, exceeded $100 million. Your Honor, but I think what we need to focus on as well is the timing of when the bar notice was entered into. At the time the bar order was entered into, as was testified and is in the record by Ms. Ulam, there was administrative expenses mounting. There was a concern of administrative insolvency. And so the debtor balanced the publication notices. Did they do any examination? Is there anything in the record about what it would have cost to publish in USA Today or in other publications like the large newspapers in Texas and Florida where most of the borrowers were located? No, Your Honor, there is not. Nothing in the record that deals with those issues. This case is still pending, correct? It is. It was filed in April of 2007. Correct. And the bar date was set at August 31 of 2007. That's correct, Your Honor. I had done bankruptcy law for some time, and that strikes me as a very quick bar date setting. Your Honor, at the inception of this case, it was the expectation of all the parties that it would be dealt with very quickly. And in order to deal with it, we needed to get a handle on the claims, and that's why the bar date was set by the debtors as quickly as we can. And what's the current status? Has there been distribution? Yes, Your Honor, there have been at least three distributions made. And what's left in the pot? There's approximately $20 million left in the pot to be distributed to creditors, and there's one illiquid asset that we still need to liquidate. But you would agree with me, would you not, that if we were to say that the bar date has to be reset for borrowers who weren't considered, I'm just saying hypothetically, if borrowers were then to file proofs of claim, they would still have to – they would be objected to and they still would have to prove that they actually had a claim. That is correct, Your Honor. And that would be based on fraud or – and, in fact, objected to and gone to trial, if you will? Yes, Your Honor. There was one decision in which a claim of less than $5,000, I think it was $1,700, a claim was awarded. That's the only claim awarded by a borrower after a trial. Several of the other borrower claims that went to trial, they were all dismissed.  No, Your Honor. I believe it was based on a failure to refund some deposit or something that wasn't forthcoming. Thank you. I know these are of record, but the docket alone is hundreds of pages. It is, Your Honor. Thank you. All right. You saved some rebuttal time. We'll hear you on rebuttal, Mr. Indelkoff. Thank you. Thank you. Mr. White, you've agreed to divide your time with amicus, Mr. Ecclesburg, but we'd like to hear from you now, Mr. White, if you're ready. Yes, Your Honor. First, I'd like to thank the court for indulging me with the difficulties I've had over the last two days. If there's one thing that we can all sympathize with, it's difficulty in air travel. Your motion is not one of the more difficult ones we've adjudicated lately, let's put it that way. Go ahead, Mr. White. Okay. Basically, I'm just going to give you a little background. I came into this case, I had refinanced the mortgage with a century and actually owned the home prior to that. And nine months after I refinanced, New Century filed for bankruptcy. Now, over the course of this time, there were numerous things that came about that was wrong with the mortgage. So I contacted Countrywide at the time. And at this time, we were unaware, completely unaware that New Century had filed for bankruptcy. And about, I believe it was May of 2008, that's when we received a foreclosure notice. At that point in time, I started researching more for information on New Century. And that's how we learned New Century was in bankruptcy. And I think a moment ago, they indicated that it's hundreds of thousands of paces. So it took me until January of 2009 to realize what I really needed to do, and that was to come up into the bankruptcy court. Did your documentation tell you that New Century was your lender? It originally didn't state New Century. That happened through a mentioned home mortgage. And then, I won't say it was three days before, three days before the actual, what do they call it, closing, New Century appeared on the document. And at that time, there were changes in, like, the interest rate, the, what do they call them, the credit scores had been eliminated, although they said it was inadvertently done. But, I mean, we were even surprised because our credit score was actually very, very high. Mr. White, did you ever pay your, make your mortgage payments on time on this loan? Yes, sir. All right. Yes, sir. Up until the point when we contacted Countrywide. At some point, you fell behind, correct? Correct. But if you had never fallen behind, then your loan would not have been foreclosed upon, right? That's correct, sir. So, how was the company supposed to know whether you were one of those borrowers who had been, was delinquent on the payments or whether you were one of those borrowers that were still current? Because when we contacted Countrywide, we told them that there was problems with the loan. They were the servicer at that time. And they actually indicated in some paperwork that we received saying that we did not, that we had asked for assistance or a modification of the loan or something of that sort, and that we didn't qualify. When you say something was wrong with the loan, was it a type where you thought the interest rate was, for example, 5%? And then all of a sudden it went to 10%. Was it along those lines? Or what was your view of what was wrong with the loan? Yes, it was a higher interest rate than we had originally been approved for. The amount of the loan itself was the same, but the interest rate was higher. In fact, you pleaded that you thought it was not an adjustable rate. They had eliminated the credit scores so that, you know, we couldn't converge as to what the actual credit score would value as an interest rate, because we didn't believe that we were even stuck on. Mr. White, Mr. White, do you have anything to tell us about the issue of whether you were a known creditor or an unknown creditor? Well, in the mortgage itself, the mortgage says that in order for notices to be received by the new century or us, the borrowers or homeowners, we would have to be served notice to our addresses, whether that be the business address or whether that be the home address. Our home address. We didn't receive any notice at our home address, and I mean I don't understand how we could not have been provided the notice when they had all of our information. Right. So we understand, I think, from your post-date brief, that your argument is that they were supposed to give you actual notice of the borrow date and send you something directly to your home, correct? That's one of the arguments, yes. I feel that it would have been simple enough for them to have provided us with that notice, which all of the borrowers, for that matter, they had all the information that they needed. All right. Is there anything else you'd like to tell us before we hear from Mr. Acklesberg, Mr. White? Well, I think that's pretty much in condition with my brief. I think that pretty much kind of lays out our belief. We really do feel that they didn't consider the borrowers when they were making their borrow date. We don't think that they considered us from the standpoint that not only will we account debtors, but they also had a contract with us. That contract was between both of us, not just them loaning us money for nothing. Okay. Thank you, Mr. White. Thank you, Your Honor. We'll hear from Counsel for Amicus, the National Association of Consumer Bankruptcy Attorneys. Mr. Acklesberg? Thank you so much, Your Honor, and I do appreciate, especially given the inability of Mr. White to get here to the court to allow me to participate. I would like to jump right into the constitutional insufficiency of this notice, but I'm also aware of the concerns you had at the outset about whether or not this is a live issue appropriate for decision. So I'm willing to go in whichever order you'd like. I think, for my purposes, I'd like you to address the jurisdictional question. Sure. Because your brief argues for a certain standard, but also I'd seem to agree, if there's perhaps the only thing that everyone agrees on, is that no creditors are entitled to actual notice. And what's still troubling me right now, I understand why it would be very helpful to this estate to get an opinion from this court regarding the adequacy of constructive notice in these two publications. But my difficulty with that is that if the whites are determined by the district court or by the bankruptcy court on the second petition for reconsideration to be known creditors, then this case is over before it begins, because everyone agrees that actual notice was not provided, and everyone agrees that actual notice is required for known creditors. So my concern is what power do we have to issue an opinion talking about the adequacy of this constructive notice in a case where actual notice might have been required? Yes. I mean, I'm obviously very interested in the core due process issue, but let me first start with why this issue is before this court, and this court does have jurisdiction. And I did some of this in the letter, but let me kind of replay this a little bit for the court. And I want to start with the bar date motion in order itself. And this is one thing that I didn't highlight in the brief, and I want to show this to the court here to start with. The only reference to publication of notice, if you turn to the appendix at A52, this is the actual motion that the debtors filed to set up the bar date, and the publication issue is dealt with here. And if you look at paragraph 19, this is the only reference that the debtors made to possible publication of notices. They say, in addition to the parties that we've listed and who we're going to be noticing directly, the debtor believes that potential claims against the debtors may exist that they're unaware of or unable to identify. Accordingly, the debtors believe that it is necessary to provide notice of the bar dates to entities whose names and addresses are unknown to the debtors. That was the only request they made to make publication notice. There was literally never a request, let alone an order, authorizing the known borrowers of this subprime lender to be notified. And I put it in quotes because, really, you just have to go back to Mullane. This is a fiction. Fiction is the word of justice. I'm a little lost as to the thrust of what you're telling us. How does this answer the question as to why the district court had jurisdiction? All right. So I want to just take the court through the chronology of events. First, we have a bar date order that authorizes sending notice to potential creditors whose names and addresses aren't known. That's step one. Then the notice gets published one day in the Wall Street Journal. The whites and other borrowers file claims. There is a proceeding, and that's the proceeding in which there's reference about the reconsideration order, which we submit is really somewhat of a red herring. I don't want to explain why. They filed an adversary proceeding, which requested two forms of relief. Prospective relief, they're seeking to rescind the mortgage. And, of course, the ruling was New Century is not your mortgage lender. The mortgage was sold. They don't have the ability to give that relief. Okay. They also asked for monetary relief. The court held as to the non-monetary prospective relief, case dismissed, there's no ability to give you any relief. As to the motion for the relief, the monetary relief, we determined that you are unknown, but we can't finally decide, the court cannot finally decide whether you get, what kind of notice you get as an unknown until later when we have, we'll decide this. This case was that deciding of that issue. The second reconsideration motion had nothing to do with that. It had to do with their continued efforts to get a rescission. Let me interrupt you for a minute, Mr. Acklesberg. What you've just told us, as I understand it then, is that the bankruptcy court made a determination that these folks are unknown creditors. It made that determination. That determination was not final until now when, because the court itself said. Wait, hold on. Don't go too fast now. We've all agreed that the bankruptcy court held that the whites were unknown creditors, correct? Yes. What did the district court hold on that question? The district court never reached that question. How did the district court, did the district court even have jurisdiction to hear that question? Yes. It did. Yes. But it didn't address it. So why do we have jurisdiction to address it? We're not in the habit of addressing questions that are resolved by bankruptcy courts and then bypassed in the district court. There's no such thing that I'm aware of as a district court bypass. We review the holdings of the district court. Actually, as I understand it, the district court has held nothing in respect to whether or not the whites are known or unknown creditors. Jurisdictionally, this court sits effectively as the district court over again. The district court's, what the district court did effectively has no bearing on this court's view of what the bankruptcy, whether the bankruptcy court did the right thing. But that's a legal question. Yes. This is a fact on question. Is this couple, are these people known or unknown creditors? That requires evidence and a hearing and et cetera. Has the time passed for Mr. White to appeal to the district court, the bankruptcy court's conclusion that he is unknown? I think that the way that order was entered, it was not final until the notice question was dealt with. What the court said was... No, no, no. It's not final. Was it ever final? Has it been finalized? Is there a final order that he is an unknown creditor? Your Honor, I believe the order... Because the motion for reconsideration, two motions for reconsideration were filed timely. Timely filed motions for reconsideration put off the time for appeal. If he had taken an appeal, he would have been, that appeal would have been thrown out because there is no final order holding that he is an unknown creditor. Is that not correct? Not entirely, Your Honor, because the decision was that, the question was, was he barred from his claim? And what the court held was, Judge Carey held, you're unknown. I decide that you're unknown, based on virtually no evidence. But I will not finally rule whether the Constitution was complied with here until we have a later proceeding that looks at that. And that's this proceeding. Mr. White is the best person to be appealing that proceeding that looked at the... But you yourself said he would not rule on it until we had a further proceeding. But that further proceeding is not the same proceeding as the one that decided he was unknown. He was holding onto it pending something else. But that holding onto the fact that he's unknown, that is still something that could be appealed. Could it not? His adversary proceeding, once that... Once that reconsideration... Yes. Yes, of course the adversary proceeding could be appealed. Yes, and so once it's appealed, it's appealed to the district court, and the district court on that score says, you're wrong there too because he's known. Your Honor, this proceeding was a proceeding that Mr. White and several other homeowners participated in after notice and opportunity to be heard that the question of whether the notice given to borrowers was compliant in due process. Okay, but that's a different proceeding. It's a collateral proceeding, and I can understand how the judge might want to hold off on it. But he held off on this pending this, and now we have this in front of us. This is still something that could come up on appeal. Let me ask it this way, Ms. Shackelford. Assume for a minute that we issue an opinion that says that the two publication notices given were sufficient to give constructive notice to unknown creditors consistent with malign and due process. What is the White's next move? I suppose they have to go back to that adversary proceeding. And argue that they are what? Well, and argue that they're known creditors, of course. So that happens before we make our decisions normally. That's what's troubling me about this case. I understand the pragmatics why both sides want us to pass on the legal issue, but the legal issue you're asking us to pass on, it would seem to me to be dependent upon a final order that tells this appellate court whether or not these folks are known or unknown creditors. But, Your Honor, really the issue has nothing to do with, has very little to do with the Whites or the Cromwells or anyone else in terms of the issue that unites them all, which was teed up here. It's not in a representative capacity. He didn't appeal in a representative capacity. He appealed himself. This is a case or controversy, and that's what we decide. We don't issue advisory opinions. We determine disputes between parties, and the parties to this particular appeal are merely the Whites and the trustee. The trustee filed a global motion. The global motion was to ask the court for its imprimatur that notice in the Wall Street Journal as to borrowers effectively whose name and address they had should be accepted as valid, and Mr. White appeared, objected, and that was a final decision of a discreet proceeding in this bankruptcy case. Sure, but then an appeal, he's the only one who took the appeal. If he didn't have standing because he was not affected by that order because he's a known creditor, then the district court should have dismissed it, and it wouldn't even be here. That's our point. I mean, I understand there can be lots of people, but they all walk away and they're fine with it, and one person appeals, if that person for whatever reason decides to drop the appeal or doesn't have standing to take the appeal, the appeal doesn't lie. Does the court wish to hear anything about the merits of the case? I mean, your position on the merits of the case is that borrowers are a discreet class. Well, it's more than that. You're not arguing that the borrowers shouldn't be regarded as unknown creditors. You're saying that they should be regarded in the status of a known creditor. Right. I'm saying that there is no basis under Molina's progeny for treating the borrowers the way they did and in a way that was never even sanctioned initially in the Bargate Order. But let's look at the case law. The case law is almost clear. Almost clear. There's no such thing. There is so much case law saying filing by publication in a national newspaper, and to argue contrary to that seems to take us outside the case law and put a requirement that's much too stringent given the case law. Not at all, Your Honor, if I may. If you take Chemtron, which is the decision that both bankruptcy court and the district court felt controlled here, Chemtron dealt with former residents and occasional visitors to the property surrounding a toxic dump. Occasional visitors or former residents. In other words, people that you can't really find. So in my view, Chemtron was completely consistent with Molina. Molina said if you know the name and address, you've got to give notice. So Chemtron is not a justification. The whole category of unknown claimant is really like putting the rabbit in the hat. It's basically saying that's someone who due process says we don't have to notify. That's a fair distinction. We don't have an identification issue because obviously they did business with all these borrowers. They know who they are. They know their address. So that's a fair distinction. But what case authority do you have for the proposition at page 8 of your brief? You claim due process does not permit a business debtor that sold a notoriously defective product to provide notice of a claimed bar date by publication only with regard to purchases for whom it has a name and address. To follow up on Judge Van Aske's point, you're viewing them as a discrete class, this entire class of borrowers. We all know how widespread the fraud was in the mortgage industry in this time frame. Are there any cases from any courts that hold consistent with that argument of yours I just read? No. I haven't found any cases that hold either way. I mean, I think the Chemtron, these toxic tort cases where you don't know who might have been injured, those are just totally irrelevant to this kind of situation. I agree with that. I'm asking are there any cases anywhere that say when a business knows the names and addresses of everybody to whom they sold a car, everybody to whom they issued a mortgage, that those folks constitute known creditors rather than just potential creditors? Well, I did cite several cases that seemed somewhat similar. There was the Kiwani Boiler case, which I cited, which noted as an example in the case of defective automobiles, the purchases can easily be found in notice to filed claims. You know who bought the car. And the case is a court held in that case that they had to give actual notice to every buyer of the car? No. It was using that as an example. I'm sorry. It was actually about a boiler that purchased a boiler that they said you had to notify. And we cited in the brief several cases where the courts were being told that Chemtron stands for the principle that you only have to publish it in the newspaper. And they said, well, this isn't like that. This is where we know who these people are that bought the product. Mr. Enkelsberg, my problem is neither Judge Kerry nor Judge Robinson touched this issue in any way, shape, or form. This was not something that was decided. This is your argument to the district court once that motion for reconsideration is denied in the bankruptcy court and an appeal is taken to the district court saying the bankruptcy court got it wrong as to unknown creditors. Your Honor, let me just give one little last bit of practicalities here. This is not about, in the end, whether some borrowers are going to be able to get $0.10 on the dollar in some distribution. What is important for this court to recognize is that when borrowers in foreclosure assert defenses that are related to the origination of their mortgage, and that mortgagee was New Century, they are told your only way to raise that is in bankruptcy. So then they're sent to bankruptcy to do that, and it's now years later, and I ask this court to consider if not now, when will this really be right? I mean, are we really seriously asking the whites to wait until the district court decides a reconsideration motion that's been pending for quite some time before it can, and anyway, that's just a motion to dismiss. I mean, who knows what happens then. In the meantime, he could be left unable to defend himself in his foreclosure. This case is ripe. It is ripe precisely because Judge Carey said, this is the proceeding at which I am deciding whether the notice provided to so-called unknown claimants was proper. And what did the district court say about that issue? And the district court said that there was insufficient factual record. There is no record. What did we have here? We have the testimony of debtors' counsel. I mean, that's what he primarily relied on, and I asked the court to look at this. So why doesn't this just go back to the bankruptcy court as the district judge asked for it to go back and make the record? It should, but all I ask for is that this court ask to direct the court to make a complete record, not simply whether one day in the Wall Street Journal as opposed to some other paper or the size of the ad. That's really, that's not the issue here. The issue here is whether there is any conceivable constitutional justification for what happened here. And to look at the whole record, what was the business this company was in? I mean, what the notice plan should have been appropriate for the particular debtor that was in bankruptcy. That's all we're asking for. Tell the court to look at the whole case seriously, not in this facile. Well, they said the debtors' counsel says they're unknown creditors, so they're unknown creditors. That's what happened here. That's all that happened. And this is the time that this court can direct the district court, the bankruptcy court, to say, Kentron is not a handcuff. You are not restricted in looking at the circumstances, the real circumstances, like the Supreme Court has said in case after case after case, you have to look at the circumstances, and there was no possible constitutional justification for what happened here. The case is live. We ask you to tell the bankruptcy court to do it right. Thank you, Mr. Acklesberg. We appreciate your participation as amicus. We have a brief rebuttal from Mr. Rendell Acato. Thank you, Your Honor. First, I would like to correct the record when asked by Judge Rendell earlier regarding Mr. White and his motion for reconsideration. On his second motion for reconsideration, the issue of whether he's a known or unknown creditor is not an issue, but as the court pointed out, that will still be an issue on appeal, but on the second motion for reconsideration, it's not. The second point I just want to make quickly is, as Judge Hardiman asked, is what's Mr. White's next steps? If this court were to rule that the notice was adequate, what happens then is that Mr. White would go back to the bankruptcy court. He still has issues about whether or not he's entitled to file a late-filed claim as a result of excusable neglect. Before you even get to excusable neglect, don't you concede that he has the opportunity to argue that he is unaffected by our hypothetical ruling if he can persuade the bankruptcy court that, in fact, he was a known creditor? No, Your Honor. That issue has been decided by the bankruptcy court. That issue would go up on appeal to the district court. So then his next move on that issue is to try to persuade the district court that the bankruptcy court erred in holding he was an unknown creditor. Your Honor, but just procedurally, so that we have all the records correct, that would be an interlocutory order in the motion to dismiss certain counts of the adversarial proceeding. The adversarial proceeding is still live with certain counts in the bankruptcy court. I see. So excusable neglect would have to be decided first, then, because that's pending in the bankruptcy court. That's correct. We would decide the excusable neglect. So maybe he's deemed to be entitled to excusable neglect, and then the district court doesn't even have to adjudicate whether the bankruptcy court correctly held that he was an unknown creditor. But he would still be an unknown creditor, Your Honor, and that would give him standing, which is what we said in our pleadings to go forward with this appeal. Your Honor, I also would like to address very quickly some of the issues raised by the amicus. Your Honor, what the amicus is trying to do is convert knowledge and identity with actual notice requirements under Mullane and Kentron. And that is not the case, that's not the law in this circuit, nor in any other circuit. Your Honor, I think, as pointed out, just the mere fact that you've done business with the debtor doesn't justify requiring that you get actual notice of the bankruptcy proceeding. Think of the effect that would have on the retail cases and on some of the other large bankruptcies going on. You would require that hundreds of them. Well, why do car companies send recall notices to everyone who bought the model, even though only 5 or 10 percent of the buyers have the bad brakes or what have you? Your Honor, they do it because that's what's required under the law, and they also do it because of the potential that exists. The difference between the car companies in this case, Your Honor, and it's an important distinction, is with respect to a defect in a car, the car companies can identify very specifically the defective product, the model, and who it was purchased. Well, the allegation here is that this was widespread fraud, and of the million mortgages, the vast majority of them were junk. None should have been issued. Your Honor, I think we need to look at that from the different perspective of, one, the borrowers who got the money, purchased the homes, ultimately may have had issues, and the parties who, in fact, purchased the loans. The MISL report, Your Honor, focused on the investors in the loans and not necessarily the borrowers. There were issues and there was allegations of fraud, but they were not as widespread as indicated. Many of the borrowers, as we said, were account debtors, received the money, purchased the homes. A lot of them got the ability to buy their first homes. Your Honor, in order to do what would be required, we would have had to examine each of the individual loans to determine if there were any defects in those products that gave rise to claims against the debtor. And that, in fact, would be contrary to the case law in both Mullane and Chemtron. There's no requirement that an exhaustive search be done of the debtor's books and records to determine whether or not a known creditor exists. They can be treated as unknown creditor. And as the Supreme Court told us in Mullane, even, unfortunately, when the best you could do was a futile attempt to give notice, that still doesn't preclude a judgment. I think what happened in this case, Your Honor, is that we utilized the Wall Street Journal. That was, as we cite in our pleadings, that was the paper most often given notice. It was given in Circuit City, American Home, Delta, a lot of other subprime mortgage cases. This exact structure of the notice was utilized in those cases. And, in fact, in this case we did the notice in the Orange County Register. In addition, Judge Carey, after considering the full record before Your Honor, I'm not sure what other additional facts there could be. The parties who did the notice were the Debtors' Council. They were the ones that had the facts and circumstances of what was considered and how it was considered. After considering all of that, Judge Carey determined, although minimally, that we did meet the constitutional standards of due process and that the notice should be sufficient to bar all unknown creditors. A quick question. Did the debtor have a website? Yes, it did, Your Honor. Thank you, Mr. Indelicato. Thank you, Your Honor. Mr. White, are you still with us? Yes, Your Honor. Okay. Well, thank you for your participation, Mr. White, Mr. Acklesberg, and Mr. Indelicato.  Thank you, Your Honor.